FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 08 2013

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
_____ DIVISION**

CASE NO. 5:13 CV00139 KGB/JTK

I.      **Parties**

In item A below, place your <u>full</u> name in the first blank and place your present address in the second blank.  Do the same for additional plaintiffs, if any.

   A.   Name of plaintiff: *Barry G. Aaron*
        ADC # *97176*

        Address: *2501 State Farm Rd. Tucker, Ar. 72168*

        Name of plaintiff: _____
        ADC # _____

        Address: _____

        Name of plaintiff: _____
        ADC # _____

        This case assigned to District Judge *Baker*
        and to Magistrate Judge *Kearney*

        Address: _____

In item B below, place the <u>full</u> name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.

   B.   Name of defendant: *Ray Hobbs   ET-AL*

        Position: *Director*

        Place of employment: *A.D.C.*

        Address: *P.O. Box 8707  Pine Bluff, Ar. 71603*

        Name of defendant: *Sadeem Mahmaad*

        Position: *Doctor*

        Place of employment: *Contractor for Corizon Medical*

Plaintiffs

Submitted Defendant List.

1. Ray Habbs, Director, ARK. Dept. of Corrections.

2. Wendy Kelley, Deputy Director of Medical Services, ARK. Dept. of Corrections.

3. Benny Magness, Board of Corrections, ARK. Dept. of Corrections

4. Bobby Glover, Board of Corrections, ARK. Dept. of Corrections.

5. Doctor Cynthia Renee Fallhowe, Corizan Medical Administrator, ONE Palo Drive, Colorado Springs, Colorado. 80906.

6. Doctor Sadeem Mahmood, 7200 South Hazel St, Pine Bluff, Ar. 71603

7. Doctor Alton Babich, Corizan Medical Services, Tucker Max Unit.

8. Doctor Sonya Pepper Davis, Corizon Medical Services, Tucker Max. Unit.

9. Jacqueline Carswell, P.A. Corizon Medical Services, Tucker Max. Unit

10. Carlos Woods, L.P.N. Corizon medical Services, Tucker Max. Unit.

Address: _7200 South Hazel St. Pine Bluff. Ar. 71603_

Name of defendant: _See Submitted Defendant List_

Position: _____

Place of employment: _____

Address: _____

Name of defendant: _____

Position: _____

Place of employment: _____

Address: _____

II.    Are you suing the defendants in:

    ☐    official capacity only
    ☐    personal capacity only
    ☑    both official and personal capacity

III.   Previous lawsuits

    A    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

        Yes ___    No _X_

    B.    If your answer to A is yes, describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

        ☐    Parties to the previous lawsuit:

            Plaintiffs: _____N/A._____

            _____

            Defendants: _____N/A_____

            _____

        ☐    Court (if federal court, name the district; if state court, name the county):

2

☐    Docket Number: ___*N/A*___

☐    Name of judge to whom case was assigned: ___*N/A*___

☐    Disposition: (for example: Was the case dismissed?  Was it appealed?
Is it still pending?) ___*N/A*___

☐    Approximate date of filing lawsuit: ___*N/A*___

☐    Approximate date of disposition: ___*N/A*___

IV.    Place of present confinement: *Tucker Max Unit*

V.    At the time of the alleged incident(s), were you:
(check appropriate blank)

_____ in jail and still awaiting trial on pending criminal charges

__✓__ serving a sentence as a result of a judgment of conviction

_____ in jail for other reasons (e.g., alleged probation violation, etc.)
explain: _____

_____

VI.    There is a prisoner grievance procedure in the Arkansas Department of Corrections.
Failure to complete the grievance procedure may affect your case in federal court.

A.    Did you present the facts relating to your complaint in the state prisoner grievance
procedure?

Yes __✓__   No ____

B.    If your answer is YES, attach copies evidencing completion of the final step of
the grievance appeal procedure.  FAILURE TO ATTACH THE REQUIRED
COPIES MAY RESULT IN THE DISMISSAL OF YOUR COMPLAINT.

C.    If your answer is NO, explain why not: ___*N/A*___

_____

3

VII.   Statement of claim

State here (as briefly as possible) the facts of you case.  Describe how each defendant is involved.
Include also the names of other persons involved, dates, and places.  Do not give any legal
arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number
and set forth each claim in a separate paragraph. (Use as much space as you need.  Attach extra
sheets if necessary.)

I was denied serious medical treatment with callous and deliberate indifference to a serious medical problem.

The doctor said my only chance to live was with a pace maker, that my heart was not beating regular and I was sure to go into cardiac arrest and die with out it. The doctor created fear and panic with this information. Since June 19, 2012 this device has caused pain and suffering.

I am being retailiated against for multiple sick calls and the use of the grievance procedure in the attempt to receive proper Medical attention.

See Statement of the Case.

VIII.    Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments. Cite no cases or statutes.

1. 3,850,000 dollars in actusal compensatory and punitive damages. 2. Appointment of Counsel. 3. Jury trial. 4. Injective relief. 5. Exercise of pendent jurisdiction. 6. Any and all other relief entitled to by law for my mental and physical abuse and suffering.

I declare under penalty of perjury (18 U.S. C. § 1621) that the forgoing is true and correct.

Executed on this _____ day of _____, 20_____.

_____

_____

_____
Signature(s) of Plaintiff(s)

Statement of The Case

## FACTS

The first day of August 2008, I arrived at the Tucker Max. Unit. I was being treated for hypertension, Asthma ECT.

Approx. 3 years and 2 months later I was transported to the hospital with chest pains. I was placed under medical care by a cardiologist of Corizons choice that knew nothing of my medical history. It was a situation where I was refered to another to keep me from receiving the proper medical treatment or just plain deliberate indifference.

I feel there is a conspiracy between A.D.C. and Corizon, by not forcing Corizon to care for inmates medically, since A.D.C. is responsible for inmates in it's care, Corizon can make more profit and lower bids for medical treatment of inmates, that comes out of A.D.C.'s pocket. I am not the only inmate affected by this conspiracy, since I know of other cases of inmates not getting

proper care.

I have written many grievances relating to these matters of which seem to do no good whatsoever, as others have done the same.

I realize that I can't expect the same care as if I were free, but I feel that by not getting the required proper treatment is showing my normal life, which is unconstitutional.

There have been several sick calls, request for interview and letters sent to the Tucker Max. infirmary concerning this matter and each request to see my original cardiologist was ignored.

Since this request was ignored, and nothing was done to correct my condition, could and probley has caused other life shortening illnesses and has surely caused more damage to my heart.

I am 58 years old and could run track and walk for hours, prior to the surgery. Now I am unable to run track or play other sports

or other activity I could do prior to
surgery.

All of these conditions have left me
in great stress and disires, and I
fear that the defendant's through
deliberate indifference, have forced
me to have stress related illnesses,
as even death because they refused
to remedy the problem at hand. I
have been told my blood pressure
is abnormaly high and my chest
hurts regularly. These conditions,
directly to the defendant's fault
has Shorten my life and Neither
I nor others should be subjected
to this kind of punishment. I was
Not sentenced to death. I have
been to the infirmary and the
doctor's office on Numerous
occasions only to be sent back to
my living quarters with no new
treatment.

## SPECIFIC FACTS

1. The 6TH day of October 2011, I had chest pains and was transported by ambulance to St. Vincent hospital. I was seen by Dr. Sadeem Mahmood. He said I was having muscle spasms around my heart. I was transported to Diagnostic unit hospital. The following week I was transported back to St. Vincent where Dr. Mahmood did a heart cath. The test showed no blockage.

2. On or about the end of October 2011, Dr. Mahmood prescribed I ware a 24 hour heart monitor, that I ware for 48 hours because the leads kept cuming loose.

3. The 8TH day of May 2012, some six months later R.N.P. Jacqueline Carswell read me some of this report. According to Dr. Mahmood's diagnosis my heart had several things wrong. Ms. Carswell made me an appointment to see Dr. Mahmood.

4. Approx. 15 days later, the 24TH day of May 2012, I saw Dr. Mahmood at

his office. I was given a long list of things that were suppose to be wrong with my heart. Dr. Mahmood then said; My friend it's like this, you must have a pace maker to make your heart beat Normal again. If you don't get the pace maker you will have cardaic arrest and die. The question is, do you want to live or die? By having the fear of death presented to me by Dr. Mahmood, I agreed to this Surgery.

5. The 9TH day of June 2012 I was transported by ambulance to U.A.M.S. with chest pains. I was treated by Dr. David Rutlen and his team of interns. Approx. 30 hours of test were preformed on my heart. The evening of the 10th day of June 2012 Dr. Rutlen did a hands on examination. At this time I was able to give Dr. Rutlen the information given to me by Dr. Mahmood, concerning a pace maker. Dr. Rutlen stated, do to the test results and your physical condition, you do not need a pace maker. You have a

strong heart. The 11TH day of June 2012 Dr. Elana Ambragini did a heart cath to check for blockage. This test showed no blockage. My blood pressure medication was changed and I was released from the hospital. After the medication change my health improved.

6. The 13TH day of June 2012 during a hour thirty minute yard call, I jogged and walked five and a half miles, pain free.

7. The 17TH day of June 2012, durning a hour thirty minute yard call, I jogged and walked five and a half miles again pain free.

8. The 18TH day of June 2012 I sent word to R.N.P. Carswell that I wanted to put off having the pace maker surgery. I was sent to the infirmary to see Ms. Carswell. After a long talk about my chances of living without the pace maker, I was told not to refuse to go to the hospital the next day.

9. The 19TH day of June 2012 I was transported to St. Vincent hospital.

Approx. 3:00 pm Dr. Mahmood put a two chamber pace maker in my left chest. The two leads run into the artery going to my heart.

10. The 20 TH day of June 2012 I was released from the hospital, transported to Malvern Unit hospital.

11. The 21st day of June I was transported back to Tucker Max and released back to population with orders to walk each day. I walked one hour a day as ordered by Dr. Mahmood.

12. The 10 TH day of July 2012 approx. 9:00 AM, I started feeling hard shocks, my whole body was jurking and bad chest pains. I was seen by the infirmary R.N.P. A.E.K.G. was done and I was sent back to my living quarters. By 2:30 pm the pain was so bad I had to have help. I was sent back to the infirmary and sometime later transported out by ambulance. IN transit to St. Vincent my heart started to beat at a rate of 175 beats per minute. My heart returned to normal for a few seconds, then shot up again. The E.M.T. had

to use the defibrillator to regain control of my heart rate. At St. Vincent E.R., Dr. Garrett Lewis diagnosis in part states; your pain does not appear to be coming from your heart. I was released and transported back to Tucker Max. infirmary and placed in a ward (cell) with a broken intercom system for 12 days. (see Grievance # 122060).

13. I continued to suffer from shocks that were jurking my whole body. The only way I could sleep was by drugs, that only lasted until the strongest affect of the drug wore off.

14. The 16th day of July 2012 I was transported to Dr. Mahmood's office. A electronic tech attemped to stop the shocks by adjusting the voltage on the pace maker. On the way back to Tucker Max. I was X rayed at J.R.M.C. and released. Durning transit the shocks started all over again. I was kept in the infirmary two more days suffering from shocks, released to my living quarters with

No New treatment.

15. The 19TH day of July 2012 Ms. Carswell said she talked to Dr. Mahmood about my symptoms. The Doctor said the pace maker could be adjusted by phone. This Never happen.

16. The 20TH day of July 2012 the shocks got worse. The pain medication I was using for sleep expired. I was suffering from the shocks and jurks cuming from the pace maker.

17. The 21st day of July 2012 the shocks continued. The 22nd the same symptoms.

18. The 23rd day of July 2012 the shocks became constant punishment, causing chest pains that would not go away no matter what I did to find comfort.

19. The 24TH day of July 2012 I filed a sick call begging for help.

20. The 25TH day of July 2012 I was seen by Nurse Carlos Woods. He said he talked to Ms. Carswell about the shocks I was having. Ms. Carswell said according to the information from Dr. Mahmood, the shocks were

Normal, that the pace maker was kicking in. (see Grievance # 122099).

21. The infirmary Staff were montering my blood pressure daily. Each day I would beg to see a different Dactor. My body was suffering from pain and very little Sleep. The only time I could Sleep is from exhaustion, only to be jurked awake a short while later from Shocks.

22. The 13TH day of August 2012 I filed a grievance in hope that I could see a Dactor who could Stop this punishment I was going through from the Shocks. (see Grievance # 122284).

23. I started to keep a log on the time the Shocks were accurring. At 555 AM I was jurked awake, 8:23 AM, 9:25 AM, 11:42 AM, 1:39 pm, 2:40 pm, 3:40 pm, 4:40 pm, 5:39 pm, 6:40 pm, 7:40 pm, 9:40 pm, the same symptoms each time. These are just a small amount of times I could remember to record in one day. Every day I Suffered more and more.

24. The 14TH day of August 2012 The shocks
started before 4:00 AM and continued
all day. I feel asleep after midnight
from exhaustion.
25. The 15TH day of August the same
symptoms from early morning until the
last recorded time was 12:05 AM.
26. The 16TH, 17TH, 18TH, and 19TH days
of August 2012 were repeats of the 14TH
and 15TH. It was constant suffering
from the shocks.
27. The 20TH day of August 2012, Ms.
Carswell made another appointment
for me to see Dr. Mahmood. My
request to see Dr. Rollefson were
stopped by Deputy Director Kelley.
"see her answer on grievance # 122284
dated 17TH day of October 2012". I
continued to suffer minute by minute.
The infirmary staff were being lead to
beleave nothing was wrong with me by
Dr. Mahmood.
28. The 28TH day of August 2012 I was
sent to see Dr. Mahmood for the second
time. His electronic tech played with
the voltage again on the pace maker.

This caused a constant ake like muscle spasms in and around my heart. I was sent back to my unit with more pain and suffering, the problem not corrected.

29. I continued to complain to the infirmary staff daily. I was looking for help from anyone who could help me. My words fell on deaf ears.

30. The 2nd day of September 2012 I wrote Senator Glover who is now on the board of corrections, begging his help in getting this problem with shocks corrected.

31. The same symptoms continuied to occure. I was suffering from depression at this point because I could not get any help from anyone.

32. The 13TH day of September 2012, Ms. Carswell called Dr. Mahmood. The doctor told Ms. Carswell that the leads were in place, that my heart was more sensitive than others, that I was more in tune with my body is the reason I could feel the shocks. The drug Gabapentin was ~~ordered~~

ordered by Dr. Mahmood to help reduce the perception of the shocks. The doctor also said the voltage was turned very low. If this drug did not work to do a follow up at his office. Another appointment was made by Ms. Carswell on this day.

33. I continuied to have the same symptoms, suffering from shocks, depression and lack of sleep.

34. The 25th day of September 2012 I saw Ms. Carswell again begging for a appointment to see Doctor William Rollefson so a stop to my suffering would happen. I was told again that Deputy Director Kelley would not allow me to pick my own doctor.

35. My symptoms continuied to get worse. The information from Dr. Mahmood had the whole infirmary staff bias toward me saying I was just making the symptoms up. I continuied to suffer from shocks, depression and lack of sleep.

36. The 1st day of October 2012 I

pg 10 of 18

filed another sick call begging for help, only to be told by Nurse Woods that there was nothing he could do, that what I was feeling was normal with a pace maker. I was being retaliated against by Nurse Woods for the use of the grievance procedure. He put himself in the place of a physican by making a diagnosic of my condition, when he knows nothing about a pace maker, and has admitted as much. (see grievance # 122099).

37. The 18th day of October 2012 I was see the third time by Dr. Mahmood and given a promess that the problem would be found and corrected.

38. As the days passed, I knew the promess Dr. Mahmood made to find and correct the symptoms I was having, were just words. I was forced to suffer from pain, depression and lack of sleep.

39. The 6th day of November 2012 I saw Dr. Charles Shack. He said he knew nothing about pace makers, prescribed a pain medication

Fiorinal because it contained aspirin.
Another appointment was made to see
Dr. Mahmood. I suffered 22 more
days with no form of treatment to
stop the shocks.

41. The 29th day of November 2012 I
saw Dr. Mahmood for the forth time.
No type of treatment was done. The
doctor prejudice and bias by his
actions and inactions. He said he
had put in 3 thousand pace makers
and had never seen anyone like me.
There is nothing wrong with the
pace maker, you are just sensitive
to it is the reason you can feel it.
I ask for it to be taken out and
he said it could be removed, I
ask if I would be able to walk or
exercise again after it was taken
out and Dr. Mahmood stated I
would never be able to do eather
after wards. I left his office
with the same symptoms and no
kind of treatment.

42. Back at the unit infirmary Ms.
Carswell made a in house appointment

for me to see Dr. Sonya Pepper Davis. Ms. Carswell stated she knew nothing about pace makers and wanted to put me in the care of someone who did.

43. I received another prescription ordered by Dr. Mahmood, Cordarone HCL 200mg, The first of December. This drug is known to cause death.

44 From the 29th day of November 2012 to the 7th day of January 2013, I had not seen the unit doctor. I wrote a four page letter to Dr. Pepper Davis and begged for her help. I was suffering from extreme pain, depression and lack of sleep.

45. The 16th day of January 2013 I filed another sick call begging for help. The pace maker had started to burn me right above it where the wires come out.

46. The 17th day of January 2013 I saw nurse Stevenson about the sick call dated the 16th. I was put on the list again to see the unit Dr. This made the third time since the

29TH day of November 2012.

47. The pace maker continuied to make my life miserable. The pain, shocks, depression, lack of sleep was added to by the burning that would not go away, and my heart was beating at a uncontroled rate that medication would not control.

48. The 22nd day of January 2013, I was called to the unit infirmary to see Dr. Pepper Davis. Nurse Woods being aware of this appointment, talked to the doctor prior to me intering her office. I was met with a prejudice, bias attitude. We talked about the symptoms I was having and the doctor agreed to make a appointment to see a different electronic tech. Ms. Alva Green, the infirmary manager was ask if this was alright. Ms. Green approved the appointment.

49. The 4TH day of Febuary 2013 I filed another sick call begging for help. I was miserable, the pace maker was causing chest pains, uncontroled

heart beats and Shocks.

50. The 5TH day of Febuary 2013 I was called to the infirmary to see Dr. Pepper Davis. I was told a appointment had been made for me to see another doctor and it was the last time the pace maker was going to be addressed.

51. The 6TH day of Febuary 2013 I went to the infirmary with chest pains and shocks. The muscles in my left brest were jumping and the burning had became worse. The doctor was called by Nurse Stevenson and Dr. Pepper Davis stated the symptoms were not life threatening. I was sent back to my living quarters with no treatment.

52. I was tired of suffering and going through a deep depression. I filed another sick call the 20TH day of Febuary 2013 begging for any kind of help

53. The 22nd day of Febuary 2013 I filed another sick call. I had to have some help. My body could not take any more punishment. I was in

constant pain and suffering.
54. The 26TH day of Febuary 2013 I
saw Dr. Pepper Davis again. This
time she prescribed two drugs
that help me to sleep for short periods.
I was told a appointment to see Dr.
Rollefson had been set, but it would
be the last help I get with the
pace maker.
55. The 1st day of March 2013 I was
transported to Dr. William Rollefson's
office. His electronic tech attemped
to adjust the voltage on the pace
maker. No matter what was tried,
it would not reguster on the top
chamber. A sonagram was done
and three X rays of my chest. The
X rays showed the bottom lead was
attached to the bottom chamber of
my heart. The top lead was approx.
three inches above my heart loose
in the artery and the wire coiled
at the top of the pace maker.
The top of the pace maker was
turned off, E.K.G. was done. The
doctor said my heart was doing

fine on it's own. Eight months of suffering
shocks, rapid heart beats, burning and
depression had ended. I ask the doctor
if he was going to attach the top lead
and he said NO. I was doing fine
without the pace maker. I then ask
him to take it out. Dr. Rollefson Assured
me this surgery was very dangerous.
A laser was used to cut the lead that
is attached to my heart. One slip and
I could be cut and bleed out before
the bleeding could be stopped. It
would be safer to leave it in place.
A second appointment was to be made
in 30 days for a follow up, At this
time the doctor said he would
turn the bottom side off as well.
56. I was forced to suffer for Approx.
8 months, my heart has suffered more
damage, by a doctor doing a surgery
not needed and then getting in a
hurry and not attaching the top lead,
then refusing to admit his mistake.
57. The deliberate pain and suffering
could have been reduced by approx.
three months, if Dr. Pepper Davis

would have used her professional ethics and made the appointment to see Dr. Rollefson when she first heard of my symptoms and how long I had already suffered. Dr. Pepper Davis actions and inactions were prejudice and bias with deliberate indifferenc to a serious medical need. A deliberate wanton infliction of unecessary pain and suffering.

58. The pace maker is now fighting my normal heart beat. Sick call filed April 7th and 14th about this.

59. April 17, 2013 I was seen by Ms. Carswell, assured that another appointment would be made to re-evaluate my pace maker. The order made by Dr. Rollefson to see me in 30 days after March 1, 2013 has been engored. The Tucker Unit Docter and RNP refuse to follow Docter's orders passed down by the cardoligest treating me.

60. As of April 29, 2013 I continue to suffer from high blood pressure, from the damage done by the Pace Maker.

pg 18 of 18

## ALLEGATIONS

1. That the defendants are all charged with the presumption to know the law regarding all issues of this action, and do know or should know that there actions and inactions are in violation thereof and, thereby have and do cause the direct and proximate injury complained of. Since the menaces enumerated herein are pervading ones left uncorrected in contemp of court specific injury need not be shown as to every claim.

2. Defendants Magness, board of corrections and Hobbs, Director of A.D.C. are directly charged by statute with the health, safety and well being of all prisoners — regardless of limitations of contract with healthcare providers — and have the power to do so, and are specifically charged with gathering information on prisoners care, and keeping statistics on

pg 1 of 5

those factors identified as prevading
menaces herein, yet failed to do
so or failed to correct said menaces
or conditions of care, thereby
directly and proximately causing
the injuries complained of.
3. Defendant's of A.D.C. and it's
agents, and corizon and it's
agents have a contractractual
relation and mutually owe a
duty to provide adequate
preventative and curative
healthcare to prisoners equal to
that provided in PULASKI County
and have separately and
collectively failed in that duty
by Not reasonable acting to remedy
the unconstitutional type of Non-Care
for profit and remedy the
incidence's of deliberate
indifference.
4. I allege an overt and covert
conspiracy to jeopardize the
health, safety and well-being
of A.D.C. prisoners; (a) Between
and amoung defendant's of Corizon

pg 2 of 5

in failing to meaningfully identify,
diagnose, and treat diseases
primarily for the sake of medical
profit; (b) Between and amoung
defendant's of the A.D.C. primarily
for the sake of saving expenses
and avoiding the manifold "cost"
(both real and abstract) in bringing
under control the inadequate
unconstitutional care and diagnosis
of inmates diseases; (c) Amoung
and between defendants of the
A.D.C. and defendant's of
Corizan to mutually enhance the
profit of the one saving of cost's
of the other; and (d) Between
A.D.C. and Corizon and amoung
unlawfully retaliate for Plaintiff
seeking of proper health care.
5. Plaintiff alleges that the defendant's
separately and together stand in
Loco Parentis to there prisoners.
Consequently, Defendant's owe an
affirmatived duty to properly
diagnosis and treat all A.D.C.
Prisoners. Where medical concerns

pg 3 of 5

is that the earliest diagnosis, the
best treatment for prolonging life,
Defendant's must afirmatively
act to help prisoners, dispite
themselves, no matter the cost.
6. Plaintiff alleges that given
the prevading problems of
inadequate medical treatment
of prisoners of the A.D.C., the
contract between the A.D.C.
and Corizon in itself is an
unconstitutional invidious, and
prevading menace between it
is such that the _less_ healthcare
provided, the greater the private
medical profit of corizon.
Prisoners have suffered violation
of rights and law solely because
Defendant's have underestimated
or short-cut health care demands
of the prison population, sought
to outbid competitors, or desire
to make a commodity out of
prisoners for private profit.
7. Plaintiff alleges that defendant's
acts and amissions violate a

host of state laws as well and,
therefore, pendent jurisdiction
should be engaged.

8. Plaintiff alleges that the
unreasonable, unhealthy length to
diagnosis and treatment of the
symptoms caused by failure of
the defendant's to diagnosis and
treat the medical problem has
caused other stress related
diseases, has rendered him
"disable" and he is entitled to
the special protection and
remedies of disability laws as
they operate on there Suite,
oth state and federal.

## FIRST CAUSE OF ACTION

1. Plaintiff incorporate under this count see facts and allegations of my complaint.

2. Defendants have each, repeatedly and systematicly, separtely and together, remain deleberately indifferent to my serious medical problem, refused adequate and obvious medical treatment repeatedly remained deleberately indifferent to grossly Negligent in treating the problem and preventing it's excelleration, and direct and proximately cause life threatening situations from stress and denied medical treatment, in violation of the 8th and 14th amendments proscription against cruel and unusual punishment and 42 U.S.C. 1983.

3. Defendant's owe a duty in Loco Parentis to accuse my health, safety and welfare where I am Not able to help myself,

pg 1 of 6

and failed in that duty.

4. Defendant's were fully aware of my serious life-threatening side affects this caused, and any person with common sense would know that a pace maker does not shock, and by ignoring the symptoms would aggravate his problem, still defendant's deleberately and with gross negiligence ignoring my medical problem, making it worse and not treating it, but repeatable causing stress and direct physical life-threatening side affects whose impact has affected the very quality and duration of my life.

5. For this subjection to cruel and unusual punishment I seek 1,000,000 in compensatory, and 2,000,000 in punitive damages because there kind of problems are recurring.

## SECOND CAUSE OF ACTION

1. I incorporate under this count see facts and allegations of my complaint.

2. Defendant's have seperately and together have conspired to directly and proxmately caused my life-threatening illness and suffering, first by not sending me to a doctor who would properly diagnosis and treat my problem and second, to retaliate against me for not silently accepting their unlawful action, in violation of the 8th and 14th amendment and 42 U.S.C. 1983.

3. Defendant's first sent me to a doctor who's only purpose was to diagnosis unnecessary treatment for profit, then sent me back to his office repeated times, causing obvious injury and direct retaliation for my effort to stop the pain and suffering.

4. For these violations I seek the
sum of 250.000 compensatory
and 500.000 in punitive damages.

## THIRD CAUSE OF ACTION

1. I incorporate under this count
see facts and allegations of my
complaint.
2. The medical contract between
A.D.C. and Corizon is unconstitutional
because there is an inherant conflict
of interest for pecuniary gain.
The contract is such that the less
medical service provided, the
greater the monetary savings
of the A.D.C. and the private
profit of Corizon. Corizon is
additionally caught between
the choice between the expense
of providing healthcare to inmates
as expense of profit, as assuring
the greater profit for Corizon
and it's stockholders by
witholding adequate healthcare.

pg 4 of 6

This inherant conflict of interest directly and proximately caused my injury.

3. For this Violation I seek injective releaf.

## FORTH CAUSE OF ACTION

1. I incorporate under this count See facts and allegations of my complaint.

2. Defendants acts and omissions are in Violation of State laws.

3. I seek exercise of pendent jurisdiction.

## FIFTH CAUSE OF ACTION

1. I incorporate under this count See facts and allegations of my complaint.

2. Defendants punishment me for Voicing my complaints, in Violation of the 1st and 14th

pg 5 of 6

amendants, 42 U.S.C. 1983, and curtailed my free speech.

3. For this Violation I seek 100.000 compensatory and other releaf.

Plaintiff's
Witness List

1. Sgt. A. Musgrove, A.D.C.
Transportation, Tucker Unit.

2. Sgt. Ricky Williams, A.D.C.
Transportation, Tucker Unit.

3. Sgt. Linsey, A.D.C.
Transportation, Pine Bluff, ARK.

4. Sgt. James Sexton, A.D.C. Security,
Hawkins Unit.

5. Mrs. Alva Green, Corizon,
Infirmary Manager Tucker Max.
Unit.

6. Inmate F. Holland 86963
Tucker Max Unit.

7. Doctor David Rutlen,
U.A.M.S. Little Rock, AR.

8. Doctor Elena Ambrogini, U.A.M.S. Little Rock, Ark.

9. Doctor William Rollefson, Heart Hospital, Little Rock, Ark.

IGTT430
3GD

INMATE NAME: Aaron, Barry G.          ADC #: 097176          GRIEVANCE#:MX-12-02060

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On July 20, 2012, you grieved that you were placed on the infirmary ward and had no way to contact anyone if you had a heart attack because there was no intercom system. You had been seen in the ER at St. Vincent's on July 10, 2012, returned to the unit and were placed on the ward for observation. You advised Dr. Babich that you wanted to go back to your cell and he stated he would have you cuffed if necessary.

The medical department responded, "Upon return from the hospital, orders were given to monitor closely, therefore you were placed on the ward. Orders for daily EKG and Vital signs were given and carried out daily. You state that your life was put in jeopardy due to there not being a call light in the cell. You were placed in the infirmary cell so that you could be monitored closely. You state that you could have had a heart attack due to none being able to hear you. This is an anticipated event (an event that may or may not occur) and per grievance policy will not be addressed. Because you were placed on the infirmary ward, monitored closely and all Dr's orders were carried out, I find this grievance to be without merit."

The portion you wrote below the signature lines for your appeal is not part of the appeal. You must write in the designated space according to policy. However, upon investigation, the intercom system was not working and will be fixed. You are not allowed to greive anticipated events, and you were not harmed. Thank you for bringing this to my attention; however, your appeal is without merit as it does not comply with the grievance policy.

Director: _Wendy Kelley_          Date: _10/17/12_

IGTT430
3GD

Attachment VI

INMATE NAME: Aaron, Barry G.         ADC #: 097176         GRIEVANCE#:MX-12-02099

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On July 26, 2012, you grieved that you were seen by Nurse Woods on July 24, 2012 and he advised you that Mrs. Carswell stated that the shocks you were feeling from your pace maker were normal. You state that Mrs. Carswell was not at the unit during the time you saw Nurse Woods; therefore, he lied about consulting with her regarding your condition. You state that your pace maker is malfunctioning and you need to see a doctor.

The medical department responded, "On 07/24/2012, you were evaluated by Nurse Woods. After discussing your symptoms with you, He discussed the situation with Mrs Carswell who stated that this normal activity of your pacemaker. You were seen again by APN Carswell on 08/21/2012 for the same complaint and after assessing you again this condition was determined to be abnormal, therefore a consult was scheduled for you. We apologize for the inconvenience this has caused, and I find this grievance to be with merit but resolved as you are scheduled to be evaluated offsite."

Your appeal states that you advised Mrs. Carswell when you were released from the ward on July 19, 2012 that your pace maker was malfunctioning and she advised that it was normal. You state that you tried to see Mrs. Carswell every time you had your blood pressure checked. You state that on August 28, 2012, Dr. Mahmood turned your pace maker down, but you are still experiencing the same symptoms just on a weaker scale. You state that the problem with the pace maker needs to be corrected or the pace maker needs to be removed.

On July 16, 2012, Mrs. Carswell noted that you went to Dr. Mahmood this day, he adjusted your pace maker and recommended a three month follow up. She also noted that you reported that you were feeling better. On July 19, 2012, Mrs. Carswell noted that you were complaining of your pace maker shocking you and that she would check to see if it needed further adjustment. There is not a sick call encounter documented in your electronic medical record for July 24, 2012 regarding complaints of your pace maker. You were seen by Mrs. Carswell on August 21, 2012 for complaints of your pace maker shocking you and she noted that while she was assessing you, her hand was on your shoulder and her hand was shocked. Mrs. Carswell noted that you needed to be scheduled with Dr. Mahmood ASAP. On August 28, 2012, Dr. Mahmood adjusted your pace maker and recommended a follow up in six months. On September 13, 2012, Mrs. Carswell noted that Dr. Mahmood recommended Gabapentin to help reduce the perception of the shock from your pace maker, the pace maker is set at a very low setting and that Dr. Mahmood does not want to adjust it down because the voltage may be too low to initiate heart beat and to follow up in his office if the Gabapentin doesn't work. Mrs. Carswell noted that you did not want to take the Gabapentin due to it altering your consciousness and that you wanted to do a stress test with and without the pace maker. Mrs. Carswell did not order the Gabapentin for you. You were seen in sick call on October 2, 2012 with complaints that your pace maker was malfunctioning and the nurse referred you to the provider. You were seen by Dr. Schock on October 10, and in chronic care October 11, and you have an appointment pending with Dr. Mahmood.

Your appeal is without merit.

_Wendy Kelley_                         _10/17/12_
Director                                Date

IGTT430
3GD

**INMATE NAME: Aaron, Barry G.**          ADC #: 097176          GRIEVANCE#:MX-12-02284

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On August 13, 2012, you grieved that your pace maker is malfunctioning. You state that you can feel the shocks from your pace maker. You state that the doctors at UAMS said that you did not need a pace maker, but Dr. Mahmood thought you did need one and now you're having to suffer from it.

The medical department responded, "You were seen by the APN on 08/21/2012 regarding your medical complaint, and referred back to UAMS for evaluation of pacemaker. You were seen on this appointment on 08/29/2012 at which time your pacemaker was adjusted and you were ordered to follow up in 6 months. Your follow up has been documented. Because your medical issue was addressed and continues to be followed, I find this grievance to be without merit."

Your appeal states that you need to see Dr. Ambragini because she is one of the doctors who stated that you did not need a pace maker. You state that you continue to feel the shocks and Dr. Mahmood is not correcting the problem.

Inmates do not get to choose their providers. You have an appointment pending with Dr. Mahmood and you should discuss the need for a pace maker with him. Your treatment is determined by licensed professionals and your concerns need to be discussed with them.

Your appeal is without merit.

Director                          Date  10/17/12